FILED
03/25/2020
Peg L. Allison
CLERK
Flathead County District Court
STATE OF MONTANA
By: Ayla Hill
DV-15-2020-0000293-PL
Eddy, Amy
1.00

Kyle W. Nelson
GOETZ, BALDWIN & GEDDES, P. C.
35 North Grand
P.O. Box 6580
Bozeman, MT  59771-6580
Ph:      (406) 587-0618
Fax:     (406) 587-5144
Email:   knelson@goetzlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

# MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY

| | |
|---|---|
| CINDY J. BURR and MICHAEL J. BURR,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON, ETHICON, INC., ETHICON, LLC, KALISPELL REGIONAL HEALTHCARE SYSTEM d/b/a KALISPELL REGIONAL HEALTHCARE and THE HEALTHCENTER, JOHN/JANE DOE DEFENDANTS 1–10, and XYZ CORPORATIONS 1–10,<br><br>Defendants. | Cause No. _____<br><br>Hon. _____<br><br>**COMPLAINT AND JURY DEMAND** |

COME NOW Plaintiffs Cindy and Michael Burr, through their counsel of record, and for their Complaint for relief against the Defendants, state and allege as follows:

## INTRODUCTION

1.      This is an action for strict products liability, negligence, fraud and violation of the consumer protection statutes related to the development, marketing, sale and ultimate implantation of a defective and unreasonably dangerous pelvic mesh product into Plaintiff Cindy Burr.

## PARTIES

2.     Plaintiff Cindy Burr (Cindy) is an individual who resides in Columbia Falls, Montana. A defective pelvic mesh product was implanted and/or inserted into Cindy's body to treat pelvic organ prolapse (POP).

3.     Plaintiff Mike Burr (Mike) is an individual who also resides in Columbia Falls, Montana, and is Cindy's husband.

4.     Defendant Johnson & Johnson, Inc. (Johnson & Johnson) is a corporation, and according to its website, the world's largest and most diverse medical device and diagnostics company, with its worldwide headquarters located in New Brunswick, New Jersey. The "Ethicon Franchise" within Johnson & Johnson was charged with the design, development, promotion, marketing, testing, training, distribution and sale of the pelvic floor repair product at issue in this case. The companies which comprise the Ethicon Franchise are controlled by Johnson & Johnson and include, but are not limited to, Ethicon, Inc., Ethicon LLC, Ethicon LTD. At all relevant times, Johnson & Johnson does or did business in the state of Montana by distributing and/or placing into the stream of commerce its pelvic mesh devices.

5.     Defendant Ethicon, Inc. (Ethicon) is a wholly owned subsidiary of Johnson & Johnson located in Somerville, New Jersey. At all relevant times, Ethicon does or did business in the state of Montana by distributing and/or placing into the stream of commerce its pelvic mesh devices through its subsidiary Johnson & Johnson.

6.     Defendant Ethicon, LLC, is a wholly owned subsidiary of Johnson & Johnson Medical, Inc., located in San Lorenzo, Puerto Rico. Ehticon LLC was charged by Johnson & Johnson with the manufacture of Ethicon's pelvic floor repair products.

7. The Ethicon and Johnson & Johnson defendants shall be collectively referred to as the "Johnson & Johnson Defendants."

8. Defendant Kalispell Regional Healthcare System d/b/a Kalispell Regional Healthcare and The HealthCenter (Kalispell Regional) is a Montana corporation with its principal place of business at 310 Sunnyview Lane, Kalispell, Montana.

9. Defendants John/Jane Does 1–10 and XYZ Corporations 1–10 are people or entities presently unknown or unidentified, who participated or contributed to the wrongful actions and injuries described herein, and who will be named in an amended pleading when their identities and/or wrongful acts become known. These defendants may include but are not limited to: employees and/or sub-entities of the named Defendant organizations and other distributors in the chain of commerce of the defective products implanted in Cindy. Plaintiffs anticipate that John Doe No. 1 or XYZ Corporation No. 1 may be the sales representative(s) who marketed the defective products to Cindy's treating physician.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this dispute.

11. This Court has personal jurisdiction over all Defendants.

12. Venue is proper in this Court pursuant to §§ 25-2-118 and 25-2-122, MCA.

## FACTS AND GENERAL ALLEGATIONS

13. Upon information and belief, Johnson & Johnson Defendants have designed, patented, manufactured, labeled, marketed, and sold and distributed a line of pelvic mesh products. These products were designed primarily for the purposes of treating SUI and POP. The Johnson & Johnson Defendants' line of pelvic mesh products share common design

elements and common defects. Moreover, each of these products was cleared for sale in the U.S. after Defendants made assertions to the Food and Drug Administration (FDA) of "substantial equivalence" under Section 510(k) of the Food, Drug and Cosmetic Act. This process does not require the applicant to prove safety or efficacy.

14. In 2009, Cindy sought medical treatment for complaints of symptomatic cystocele. On November 17, 2009, Cindy presented to Dr. Robert M. Rogers and underwent a couple of procedures, including posterior colporrhaphy. During that procedure, Dr. Rogers implanted the Johnson & Johnson Defendants' Gynemesh soft.

15. Cindy's procedure was performed by Dr. Rogers at the Surgery Center at HealthCenter Northwest in Kalispell, Montana (now called The HealthCenter at Kalispell Regional). Upon information and belief, the Johnson & Johnson Defendants designed and manufactured the Gynemesh and placed the medical device into the stream of commerce by selling and distributing it the Surgery Center for ultimate sale to Cindy. Upon information and belief, the Surgery Center ultimately sold or caused to be sold the Gynemesh to Cindy.

16. At all times material to this action, the Johnson & Johnson Defendants and Kalispell Regional were engaged in the business of selling medical devices, including the Gynemesh that was implanted in Cindy.

17. Several years later, Cindy began to suffer from stress and urge urinary incontinence. On March 26, 2018, Cindy's gynecologist, Dr. D. Randall Beach, advised her to seek a specialist for excision of her eroded mesh and a possible TVT procedure.

18. On May 3, 2018, Cindy consulted with Dr. Una J. Lee at Virginia Mason Medical Center in Seattle, Washington. Dr. Lee identified the mesh erosion.

19. Finally, on May 7, 2018, Cindy underwent surgery for removal of the eroded mesh at Virginia Mason Medical Center in Seattle, Washington (the revision surgery). The post-operative diagnosis concluded that the pelvic mesh product had eroded into Cindy's anterior vagina near urethra.

20. Upon information and belief, prior to implantation of the pelvic mesh products implanted in Cindy, the Johnson & Johnson Defendants sought and obtained approval for their sale in the U.S. based upon Defendants' assertions to the FDA of "substantial equivalence" under Section 510(k) of the Food, Drug and Cosmetic Act. This clearance process does not require the applicant to prove safety or efficacy.

21. Upon information and belief, the Johnson & Johnson Defendants' pelvic mesh products that where implanted in Cindy contain monofilament polypropylene mesh and/or collagen. The Defendants have made claims that the monofilament polypropylene mesh in the pelvic mesh products is inert. Upon further information and belief, these claims are false and this material is biologically incompatible with human tissues and promotes a negative immune response. The adverse reaction promotes degradation of the pelvic tissue and can contribute to the formation of severe adverse reactions to the mesh.

22. Upon information and belief, the pelvic mesh products were nonetheless marketed and sold to the medical community and to patients such as Cindy as safe, effective, and reliable medical devices that can be implanted by safe, effective, and minimally invasive techniques.

23. Contrary to these representations and marketing campaigns, the pelvic mesh products have high failure, injury and complication rates, and require frequent and debilitating revision surgeries.

24. Upon information and belief, the Johnson & Johnson Defendants consistently underreported and withheld information about the propensity of the pelvic mesh products to fail and cause injury and complications, and have misrepresented the efficacy and safety of these products.

25. Despite the Johnson & Johnson Defendants' underreporting of adverse events associated with its pelvic mesh products, enough complaints were recorded for the FDA to issue two public health notifications regarding the dangers of these devices.

26. On October 20, 2008, the FDA issued a Public Health Notification that described over 1,000 reports of complications (otherwise known as "adverse events") that had been reported over a three year period relating to the pelvic mesh products. Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA's MAUDE database indicates that Johnson & Johnson/Ethicon is one of the manufacturers of the products that were the subject of the notification. In 2008, the FDA described the complications associated with pelvic mesh products as "**rare**."

27. On July 13, 2011, the FDA issued a Safety Communication wherein the FDA stated that the "serious complications associated with surgical mesh for transvaginal repair of POP are **not rare**" and that "it is not clear that transvaginal POP repair with mesh is more effective than traditional non-mesh repair in all patients with POP and it may expose patients to greater risk." (emphasis original).

28.     Contemporaneously with the Safety Communication, the FDA released a publication titled "Urogynecologic Surgical Mesh: Update on the Safety and Effectiveness of Transvaginal Placement for Pelvic Organ Prolapse" (the White Paper). In the White Paper, the FDA noted that the published, peer-reviewed literature demonstrates that "[p]atients who undergo POP repair with mesh are subject to mesh-related complications that are not experienced by patients who undergo traditional surgery without mesh." The FDA summarized its findings from its review of the adverse event reports and applicable literature stating that it "has NOT seen conclusive evidence that using transvaginally placed mesh in POP repair improves clinical outcomes any more than traditional POP repair that does not use mesh, and it may expose patients to greater risk." The FDA White Paper further stated that "these products are associated with serious adverse events . . . Compounding the concerns regarding adverse events are performance data that fail to demonstrate improved clinical benefit over traditional non-mesh repair." In its White Paper, the FDA advises doctors to, *inter alia*, "[r]ecognize that in most cases, POP can be treated successfully without mesh thus avoiding the risk of mesh-related complications." The FDA concludes its White Paper by stating that it "has identified serious safety and effectiveness concerns over the use of surgical mesh for the transvaginal repair of pelvic organ prolapse."

29.     Upon information and belief, at the time the Johnson & Johnson Defendants began marketing its pelvic mesh products, including those implanted in Cindy, they were aware that their products were associated with a significant risk of these adverse events communicated by the FDA's July 13, 2011 Safety Communication.

30. Upon information and belief, the information contained in the FDA's Public Health Notification of October 2008 and the Safety Communication of July 13, 2011 was known or knowable to the Johnson & Johnson Defendants and was not disclosed in oral or written communications, direct to consumer advertising in the form of patient brochures, instructions of use or labeling.

31. The injuries, conditions and complications suffered by women who have been implanted with Defendants' pelvic mesh products include, but are not limited to, mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia (pain during sexual intercourse), blood loss, acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, chronic pelvic pain, urinary and fecal incontinence, and prolapse of organs.

32. As a result of the implantation of the Johnson & Johnson Defendants' pelvic mesh products, Cindy has suffered and will continue to suffer serious bodily injuries, including pain, discomfort, pressure, incontinence, discharge, scarring, infection, odor and bleeding.

## CAUSES OF ACTION

### COUNT I: STRICT LIABILITY – DEFECTIVE PRODUCT
### (Johnson & Johnson Defendants)

33. Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

34. The pelvic mesh products implanted in Cindy are products under Montana law. The Johnson & Johnson Defendants are engaged in the business of manufacturing, distributing, and selling medical devices, including the pelvic mesh products implanted in Cindy.

35. The Johnson & Johnson Defendants sold or caused to be sold the pelvic mesh products in a defective condition unreasonably dangerous to Cindy, for which Montana law declares that the Johnson & Johnson Defendants are strictly liable.

36. The defective condition caused Cindy's injuries, damages and losses as set forth herein in an amount to be proven at trial.

37. At all relevant times, the Johnson & Johnson Defendants had knowledge of the risk, hazards and dangers associated with their defective pelvic mesh products, and that they were in a dangerous condition when they left the Johnson & Johnson Defendants' possession. Plaintiffs had a right to rely on, and did rely on, representations by the Defendants that it would provide pelvic mesh products that were safe to implant into the human body and that would not be defective. The Johnson & Johnson Defendants sold the pelvic mesh products to Cindy in conscious disregard of the dangers it presented and concealed material facts regarding the defective condition of their products, and therefore acted with actual malice, actual fraud, or both within the meaning of § 27-1-221, MCA, for which punitive damages must be assessed in an amount sufficient to make an example of its wrongdoing and deter the Johnson & Johnson Defendants from similar wrongful conduct in the future.

### COUNT II: STRICT LIABILITY – DEFECTIVE PRODUCT
### (Kalispell Regional)

38. Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

39. The Johnson & Johnson pelvic mesh products are products under Montana law. Kalispell Regional is engaged in the business of selling medical devices, including the Johnson & Johnson pelvic mesh products implanted in Cindy.

40. Upon information and belief, Kalispell Regional sold the Johnson & Johnson pelvic mesh products in a defective condition unreasonably dangerous to Cindy, for which Montana law declares that Kalispell Regional is strictly liable.

41. The defective condition caused Cindy's injuries, damages and losses as set forth herein in an amount to be proven at trial.

## COUNT III: NEGLIGENCE
### (Johnson & Johnson Defendants)

42. Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

43. The Johnson & Johnson Defendants had a duty to use reasonable care in designing, manufacturing, marketing, labeling, packaging, warning, distributing and selling the pelvic mesh products inserted into Cindy.

44. The Johnson & Johnson Defendants breached their duty of care to Cindy in the design, testing, research, manufacture, marketing, labeling, packaging, warning, distribution and sale of the pelvic mesh products inserted into Cindy.

45. Cindy has suffered injury, damage and loss as a result of the Johnson & Johnson Defendants' breach in an amount to be determined at trial.

46. At all relevant times, the Johnson & Johnson Defendants had knowledge of the risk, hazards and dangers associated with their defective pelvic mesh products. Plaintiffs had a right to rely on, and did rely on, representations by the Johnson & Johnson Defendants that it would provide pelvic mesh products that were safe to implant into the human body and that would not be defective. The Johnson & Johnson Defendants sold the pelvic mesh products to Cindy in conscious disregard of the dangers it presented and concealed material facts regarding the defective condition of their products, and therefore acted with actual malice, actual fraud, or

both within the meaning of § 27-1-221, MCA, for which punitive damages must be assessed in an amount sufficient to make an example of its wrongdoing and deter the Johnson & Johnson Defendants from similar wrongful conduct in the future.

### COUNT IV: FRAUD
### (Johnson & Johnson Defendants)

47. Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

48. The Johnson & Johnson Defendants represented that their pelvic mesh products, including those inserted into Cindy, were safe and effective and that their products were not defective.

49. These representations were false. The pelvic mesh products were dangerous and defective, lacked efficacy for their purported use, were unsafe in normal use, and were likely to cause serious consequences, including permanent and debilitating injuries.

50. The Johnson & Johnson Defendants' false representations were material to Cindy's decision to purchase and use the pelvic mesh products to treat her POP.

51. The Johnson & Johnson Defendants knew their representations were false and affirmatively concealed these material facts from Cindy and her physicians (and therefore Cindy).

52. The Johnson & Johnson Defendants intended that Cindy and her physicians would rely on their false representations so that Cindy would purchase their pelvic mesh products and so that Cindy's physicians would dispense, prescribe and recommend these products, including the products that were ultimately implanted in her.

53. Cindy and her physicians were ignorant of the falsity of the Johnson & Johnson Defendants' representations.

54. Cindy and her physicians had a right to rely upon the Johnson & Johnson Defendants' representations.

55. As a result, Cindy suffered damage, injury and losses in an amount to be proven at trial.

56. At all relevant times, the Johnson & Johnson Defendants had knowledge of the risk, hazards and dangers associated with their defective pelvic mesh products. Plaintiffs had a right to rely on, and did rely on, representations by the Johnson & Johnson Defendants that it would provide pelvic mesh products that were safe to implant into the human body and that would not be defective. The Johnson & Johnson Defendants sold the pelvic mesh products to Cindy in conscious disregard of the dangers it presented and concealed material facts regarding the defective condition of their products, and therefore acted with actual malice, actual fraud, or both within the meaning of § 27-1-221, MCA, for which punitive damages must be assessed in an amount sufficient to make an example of its wrongdoing and deter the Johnson & Johnson Defendants from similar wrongful conduct in the future.

### COUNT V: CONSTRUCTIVE FRAUD
### (Johnson & Johnson Defendants)

57. Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

58. The Johnson & Johnson Defendants' conduct as described above in Count IV amounts to constructive fraud for creating false impressions through misleading words, statements and conduct.

59. Cindy was damaged as a result of the Johnson & Johnson Defendants' constructive fraud.

60. Cindy is entitled to recover damages in an amount to be proven at trial.

## COUNT VI: NEGLIGENT MISREPRESENTATION
### (Johnson & Johnson Defendants)

61. Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

62. The Johnson & Johnson Defendants were aware of facts which were material to Cindy's decision to purchase the pelvic mesh products to treat her POP. Specifically, and without limitation, the Johnson & Johnson Defendants were aware that their pelvic mesh products were in a defective condition unreasonably dangerous.

63. The Johnson & Johnson Defendants failed to disclose to Cindy that their pelvic mesh products that were inserted into Cindy were in a defective and unreasonably dangerous condition. The Johnson & Johnson Defendants' statements and omissions constituted representations that its pelvic mesh products were safe and not defective.

64. Those representations were false.

65. The representations were material to Cindy.

66. The Johnson & Johnson Defendants had no reasonable grounds to believe its representations or the impression created by their non-disclosures and omissions were true.

67. The Johnson & Johnson Defendants intended for Cindy to rely on the false representations and the false impressions created by their non-disclosures and omissions.

68. Cindy was ignorant of the falsity of these representations and the falsity of the impressions created by these non-disclosures and omissions.

69. Cindy relied upon the false representations and the false impressions created by the Defendants' non-disclosures and omissions.

70. Cindy had a right to rely on the Johnson & Johnson Defendants' representations and the impressions created by their non-disclosures and omissions.

71.     Cindy's reliance was justified.

72.     Cindy has suffered damage, injuries and loss by the Johnson & Johnson Defendants' negligent misrepresentation in an amount to be proven at trial.

### COUNT VII: VIOLATION OF CONSUMER PROTECTION LAWS
### (Johnson & Johnson Defendants/Kalispell Regional)

73.     Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

74.     The Montana Consumer Protection Act (CPA), § 30-14-101, MCA, *et seq.*, provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103. The Montana CPA allows for a private cause of action.

75.     Cindy purchased the pelvic mesh products for personal purposes.

76.     Cindy is a consumer as defined by the Montana CPA.

77.     The Defendants' misrepresentations and concealment of material facts, described above, constitute unfair and deceptive acts and practices in the conduct of the Defendants' business.

78.     As a result of the Defendants' unfair and deceptive acts and practices, Cindy has suffered ascertainable losses of money because Cindy has incurred several additional medical and surgical procedures and their associated costs and injury.

79.     Cindy is entitled to recover such damages caused by the Defendants' unfair and deceptive acts or practices, plus up to three times actual damages, together with her reasonable attorneys' fees for prosecuting her claims, pursuant to § 30-14-133, MCA.

## COUNT VIII: BREACH OF EXPRESS WARRANTY
### (Johnson & Johnson Defendants/Kalispell Regional)

80. Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

81. Upon information and belief, the Defendants made representations to the general public, hospitals and health care professionals that their pelvic mesh products were safe and reasonably fit for their intended purpose.

82. Cindy and/or her treating physician chose Defendants' pelvic mesh products based upon the Defendants' warranties and representations regarding the safety and fitness of the products.

83. Cindy, individually and/or by and through her treating physician, reasonably relied upon the Defendants' express warranties and guarantees that their pelvic mesh products were safe, merchantable, and reasonably fit for their intended purpose.

84. The Defendants breached these express warranties because the pelvic mesh products sold to and implanted in Cindy were in a defective and unreasonably dangerous condition.

85. Cindy has suffered damage, injuries and loss by the Defendants' breach of their express warranties in an amount to be proven at trial.

## COUNT IX: BREACH OF IMPLIED WARRANTY
### (Johnson & Johnson Defendants/Kalispell Regional)

86. Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

87. The Defendants impliedly warranted that their pelvic mesh products were reasonably fit for the ordinary purpose for which they are intended and conform to the promises or affirmations of facts made on the container or label.

88.  Cindy, individually and/or by and through her treating physician, reasonably relied upon the Defendants' skill and judgment that their pelvic mesh products were safe, merchantable, and reasonably fit for their intended purpose.

89.  The Defendants breached these implied warranties because the pelvic mesh products sold to and implanted in Cindy were in a defective and unreasonably dangerous condition.

90.  Cindy has suffered damage, injuries and loss by the Defendants' breach of their express warranties in an amount to be proven at trial.

## COUNT X: LOSS OF CONSORTIUM
### (Johnson & Johnson Defendants)

91.  Plaintiffs incorporate the foregoing allegations as if set forth fully herein.

92.  As a direct and proximate result of the above-described injuries sustained by Cindy, where applicable, her husband, Mike, has suffered a loss of spousal consortium, companionship, society, affection services and support.

93.  Mike is therefore entitled to damages in an amount to be determined at as a result of Mike's loss of consortium.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief against the Defendants:

1.  For an award of compensatory damages in an amount to be proven at trial;

2.  For an award of punitive damages where appropriate in an amount to be proven at trial;

3.  For Plaintiffs' costs of suit and attorneys' fees; and

4.  For any other relief that the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.

DATED this 25th day of March, 2020.

GOETZ, BALDWIN & GEDDES, P. C.

By: _____
      Kyle W. Nelson

**ATTORNEYS FOR PLAINTIFFS**